J-S35004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: L.B.,  A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.W., FATHER | |
| Appellant | No. 578 EDA 2019 |

Appeal from the Order Entered January 28, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-DP-0002974-2015, FID: 51-FN-002498-2015

BEFORE:  OLSON, J., STABILE, J., and STRASSBURGER, J.*

CONCURRING STATEMENT BY STABILE, J.:        **FILED JANUARY 08, 2020**

I concur with the Majority's decision in this case and, in particular, its conclusion that the order appealed from qualifies for interlocutory review as a collateral order under Pennsylvania Rule of Appellate Procedure 313.  I write separately to address the learned Dissent's view that a) the trial court's order retained responsibility for determining when visitation was appropriate, and b) the Majority's determination that the appealed order satisfies the third prong of the collateral order doctrine is inconsistent with other of our cases.

The question Father presents in this appeal is whether the trial judge committed error in ruling that Father's visits with Child are to be suspended indefinitely until the therapist approves of visits once again.  In essence,

_____

* Retired Senior Judge assigned to the Superior Court.

Father argues that the trial court's delegation to the therapist to determine when visits may resume is an unlawful delegation of judicial authority. In particular, Father challenges whether it is lawful for the therapist and not the court to determine whether Father continues to present a grave threat to Child to justify indefinite suspension of visitation.

In relevant part, the trial court's January 28, 2019 permanency review order provides that legal custody of Child shall remain with the Philadelphia Department of Human Services and that an additional condition of visitation is that "Father's visits with the child are to remain suspended **upon** the recommendation of the child's therapist." (Emphasis added.) The order further provides that "family therapy between Father and child is to begin **upon** the recommendation of the therapist." (Emphasis added.) In its April 2, 2019 opinion however, the trial court explains that it "issued a decree suspending Father's visit with the Child **pending** the recommendation of the Child's therapist." Opinion, 4/2/19, at 3 (emphasis added). In that same opinion the court further explains that it did not suspend Father's visits indefinitely, but rather temporarily suspended visits **pending** the Child's therapist's recommendation. *Id.*, at 5-6. Thus, it is unclear whether the trial court suspended visitation based **upon** the therapist recommendation, or whether it suspended visitation **pending** receipt of the therapist's recommendation. The fact Father presently has no visitation rights suggests the former is the case.

Father interprets the court order to mean that visitation may not resume until determined to be appropriate by the therapist, which in this case would require the therapist to determine Father no longer is a grave threat to child. The appellee, Philadelphia Department of Human Services (DHS), argues that Father's interpretation is a misreading of the order. Instead, DHS argues that the order does not make resumption of visits contingent on the therapist recommendation, but rather provides only "that family therapy is to begin upon the recommendation of the therapist." DHS Brief, at 8. DHS concludes the clear import of this language is that the court will entertain a request to resume visitation once the therapist has made a recommendation the child is ready to participate in family therapy. Without doubt, the court's order left some ambiguity with respect to the question presented by Father.

Based upon the foregoing, I cannot agree with the Dissent that the order provides that the court will remain the ultimate arbiter of Father's visitation rights upon hearing a recommendation by the therapist. Dissent, at 5. The Dissent arrives at this conclusion because the order "strongly implies" that this is what the court meant. *Id.* Respectfully, I do not believe that reliance upon implication satisfactorily resolves the ambiguity in the trial court's order, at least with respect to the issue raised by Father. Therefore, because the trial court has not objected to the issue as framed by Father, I believe that for purposes of this appeal the question—whether the trial court may properly outsource the determination to the therapist of whether Father remains a

"grave threat" to child and whether visitation may occur—is an issue properly before this Court.

Continuing, the Dissent argues that treating the instant order as one that satisfies the third prong of the collateral order doctrine, exacerbates the inconsistent application of the doctrine in the context of dependency matters, citing our recent cases in **In Interest of J.M.**, 2019 WL 4385685, at *8 (Pa. Super., September 13, 2019) and **In re S.W.**, 2019 WL 5078918, at* 1 (Pa. Super., October 10, 2019). Respectfully, I disagree, as I find those cases distinguishable.

To qualify for interlocutory review as a collateral order under Pa.R.A.P. 313, a litigant must demonstrate that the order is one that 1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review was postponed until final judgment in the case, the claim will be irreparably lost. Only the third prong of Rule 313 is at issue here. In **J.M.** and **S.W.**, collateral review was denied upon the basis that the claims in those cases would not be irreparably lost if review was denied until a final order was entered.

In **J.M.**, the children were adjudicated dependent and mother was denied unfettered right to visitation. Mother's right to visitation was contingent upon tests showing both mother and children to be drug free before visitation could occur. We observed in that case that the next permanency review was only one month away and, as the Majority also observes, that the

order at issue did not eliminate contact entirely between mother and children. Therefore, mother's right to home visits in general was not irreparably lost at that point in the proceedings.

In **S.W.**, mother had line-of-sight/line-of-hearing visits with children at the Community Umbrella Agency. After a permanency review hearing, mother's visitation with children was temporarily suspended because the court was informed that children were suffering severe negative reactions to visits by mother. The trial court determined that it had to ascertain whether there was a cause-and-effect between mother's visits and the children's behavioral issues before proceeding further. The trial court therefore temporarily suspended mother's visits until this evaluation could be completed by a therapist and a recommendation received. If after receiving the recommendation the court decided to suspend mother's visitation indefinitely, she would have the opportunity to appeal and raise her claims at that time. We noted that requiring mother to appeal after the trial court made its ultimate decision as to whether to suspend visitation, would allow this Court to receive a more developed record that would aid us in conducting appellate review. **Id.**, at *27.

Instantly, unlike in **J.M.** and **S.W.**, Father's visitation rights have been indefinitely suspended and remain contingent upon findings to be made by the therapist. As important, while the issues in **J.M.** and **S.W.** were whether the courts abused their discretion based upon the conditions imposed to permit

visitation, the issue here is vastly different, compelling a different third-prong analysis. Here the issue is whether the trial court may outsource the determination as to whether a grave threat presents in this case and when visitation may resume or continue to be indefinitely suspended, as determined by the therapist. If permanency reviews are allowed to proceed without resolution of this outsourcing issue, Father's right to challenge this delegation may be irreparably lost by subsequent permanency review orders. As the Majority also points out, the court order determining that Father poses a "grave threat" to children may very well result in more than a denial of visits or series of visits. That finding can ultimately affect a custody determination or termination of parental rights. Unlike the cases of *J.M.* and *S.W.* where there was no finding of a "grave threat" to suspend visitation indefinitely, there is an immediate need here to decide whether a therapist can make determinations on the grave-threat standard and when visitation may commence again. Therefore, I do not find that our prior cases in *J.M.* and *S.W.*, and in particular *S.W.*, should result in the denial of collateral review here. The instant issue for review is different and the harm in allowing a third party to supplant the decision-making authority of a court may not be remedied later without irreparable harm to Father and to the dependency process.

Judge Strassburger joins.